# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00077-CR

**David Carrol Gillenwaters, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY
NO. 03-1082-2, HONORABLE TIMOTHY L. WRIGHT, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted David Carrol Gillenwaters of telephone harassment. See Tex. Pen. Code Ann. § 42.07(a)(4) (West 2003). The jury determined that Gillenwaters made repeated telephone communications to Linda Ortiz with the intent to harass, annoy, and offend. The court assessed punishment at confinement for ten days and a $250 fine. On appeal, Gillenwaters contends that the evidence is legally insufficient to support the conclusion that he made telephone communications to Ortiz with criminal intent. Gillenwaters also asserts that section 42.07 of the Texas Penal Code is unconstitutionally vague and overbroad on its face and as applied in this case. For the reasons that follow, we affirm the judgment of the trial court.

## BACKGROUND

Gillenwaters met Ortiz at an Austin area Wal-Mart where they both worked. They married in 2000, but, after Gillenwaters was fired in 2001, their relationship began to deteriorate. Ortiz filed for divorce in July 2002.

On the morning of October 22, 2002, Gillenwaters approached Ortiz in the Wal-Mart parking lot and began yelling loudly and cursing at her. Ortiz had to be escorted into the building by a male coworker. Gillenwaters began calling the Wal-Mart thirty minutes later. Afraid to speak to Gillenwaters, Ortiz had her coworkers continue to tell him that she was not available. However, Gillenwaters continued to call the Wal-Mart from five that morning until around one that afternoon. Although he was repeatedly asked to stop calling, Gillenwaters called about forty times an hour looking for Ortiz. Appellant's repeated calls made Ortiz so upset that she could not perform her duties at work. After one of her coworkers dialed 911, Ortiz complained to the police about receiving the calls. When Ortiz arrived home, she discovered that Gillenwaters also had left ten messages on her home answering machine. In one message, Gillenwaters stated: "A lot of people are getting ready to get hurt. You forget that I know tons of people. They're getting ready to go to work at 9 o'clock tomorrow morning, if I don't get a phone call from you to call it off, then lives are going to be ruined. . . . I'll take 'em all down." Gillenwaters also threatened: "I'm going to bury your ass," "You don't understand what you're doing," "[Y]ou bit off more than you can chew," and "I'm gonna press it and I'm gonna kill it."

Ortiz filed a written complaint with the police on October 24 but charges were not filed against the appellant at that time. After Ortiz filed the complaint with the police, Gillenwaters made additional calls to Wal-Mart looking for Ortiz. At one point, he called pretending to be a

2

private investigator and told Ortiz's coworkers to warn her that a case was being built against her for promiscuity.

Gillenwaters was eventually charged with telephone harassment in an information alleging that on or about October 22, 2002:

> "[W]ith intent to harass, annoy, alarm, abuse, torment, and embarrass Linda Ortiz, the said defendant made repeated telephone communications to Linda Ortiz in a manner resaonable [sic] likely to harass, alarm, abuse, torment, embarrass and offend Linda Ortiz, against the peace and diginity of the State."

The jury found Gillenwaters guilty, and the court assessed punishment at ten days' confinement and a $250 fine.

## DISCUSSION

Gillenwaters raises four points of error on appeal. He first claims that the evidence is legally insufficient to support the guilty verdict because the State failed to prove that he made telephone communications to Ortiz with criminal intent. By his remaining three points, Gillenwaters contends that section 42.07 is unconstitutionally vague and overbroad on its face and as applied to him.

### Evidence legally sufficient

The test for determining the legal sufficiency of the evidence to support a criminal conviction is whether, viewing the evidence in the light most favorable to the State, we can conclude that *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Johnson v. State*, 23 S.W.3d

3

1, 7 (Tex. Crim. App. 2000). Appellant was charged under section 42.07 of the penal code. A person commits an offense under this section, if, with intent to harass, he makes repeated telephone communications in a manner reasonably likely to harass, annoy, or offend another. Tex. Pen. Code Ann. § 42.07(a)(4) (West 2003). The intent of the accused is ordinarily determined by circumstantial evidence. *See Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). On appeal, we do not inquire whether the evidence persuades us to find that a defendant had a particular intent; instead we determine whether a rational jury could have found the intent to commit the crime beyond a reasonable doubt. *Brimage v. State*, 918 S.W.2d 466, 476 (Tex. Crim. App. 1994).

Although there is no dispute that Gillenwaters repeatedly called Ortiz, he argues that the State failed to prove that he possessed the requisite criminal intent because: (1) there are alternate, innocent explanations for his behavior, and (2) it was not his *sole* intent to annoy, harass, or offend the complainant. He also contends that there was no evidence that he communicated with Ortiz. He further argues that the State improperly used evidence of incidents occurring after Ortiz filed her complaint. We find the evidence sufficient to establish intent for the following reasons.

Although Gillenwaters contends that there were potentially innocent explanations for his acts, the State is not required to disprove alternative reasonable hypotheses concerning an accused's intent. *See Matson v. State*, 819 S.W.2d 839, 845-46 (Tex. Crim. App. 1991); *see also Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991) (abandoning the entire reasonable alternative hypothesis construct), *overruled in part on other grounds by Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).

Second, the State is not required to prove that Gillenwaters's sole intent was to harass and annoy Ortiz. *See Salisbury v. State*, 867 S.W.2d 894, 896-97 (Tex. App.—Houston [14th Dist.]

4

1993, pet. ref'd.). In *Salisbury*, the appellant was convicted under section 42.07 but argued on appeal that the evidence was insufficient to prove that he intended to harass the complainant. Salisbury claimed that his constant calls to the complainant were not criminal because they were motivated by undying love. *Id*. The court rejected Salisbury's claim and held the evidence legally sufficient to support the conviction. *Id*. The *Salisbury* court reasoned:

> The mere fact that a few of the communications sent by appellant contained references to appellant's love for the complainant, does not negate the majority of communications containing obscene content and the fact that the complainant did not wish to see or hear from appellant.

*Id.* at 897.

Similarly, Gillenwaters's assertion that there were other explanations for his conduct does not negate the evidence indicating that his actions were intended to annoy and harass Ortiz. Appellant admitted to the Austin Police Department that he made the continuous calls because Ortiz would not speak with him. The numerous messages Gillenwaters left on Ortiz's answering machine, especially the threatening messages, support the finding that his motives were not innocent. His calls made under the private-investigator pretense also reveal that he did not intend just to speak with Ortiz about a personal matter. Although there may have been alternative or additional reasons for Gillenwaters's behavior, there is also a substantial amount of evidence from which the jury could have concluded that Gillenwaters intended to harass and offend Ortiz.

The jury was entitled to infer an intent to "harass" from the conduct of Gillenwaters. Therefore, viewing the evidence in a light most favorable to the verdict, we hold that the jury could have found that Gillenwaters had the requisite criminal intent to commit the offense.

5

Gillenwaters also posits that the evidence was insufficient to support a conviction because he never actually "communicated" with the complainant. Although the term "communication" appears in section 42.07 of the penal code, the word is not defined by statute. When a statutory term is not directly defined, the term should be read in context and construed according to the rules of grammar and common usage. *See Pettijohn v. State*, 782 S.W.2d 866, 868 (Tex. Crim. App. 1989). A common definition of the term is "the expression or exchange of information by speech, writing, gestures, or conduct." *Black's Law Dictionary* (8th ed. 2004). Under this definition, Gillenwaters expressed information to Ortiz. Gillenwaters left messages on Ortiz's answering machine, and he repeatedly communicated messages to Ortiz while she was at work—information passed to Ortiz through her coworkers. It is not necessary for the appellant to speak directly to the complainant in order to communicate with her.

Finally, Gillenwaters claims that any messages left on Ortiz's answering machine on October 22, 2002, but after Ortiz first made a complaint to the police while at the Wal-Mart, cannot be used to establish his criminal intent. Gillenwaters has confused a complaint to police with the filing of a criminal complaint and information. The prosecution is limited to using proof of offenses occurring prior to the date of the indictment's presentment and within the statute of limitations period; the prosecution is not otherwise bound by the "on or about" date alleged in the information. *See* Tex. Code Crim. Proc. Ann. art. 21.02(6) (West 1989); *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). In this case, the criminal complaint and information specify that the offense date was October 22, 2004. The jury's verdict may properly be based on the calls and messages that occurred after Ortiz first made a complaint to the police and before the date the information was

6

filed. The information was filed on March 11, 2003. The evidence showed that Gillenwaters made prohibited communications during the relevant period.

For all the reasons stated above, the verdict is supported by legally sufficient evidence.

**Statute not unconstitutionally vague and overbroad**

In his second and third points of error, appellant claims that the telephone harassment statute is unconstitutionally vague and overbroad on its face.

When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature acted reasonably, not arbitrarily, in enacting the statute. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The burden rests on the individual who challenges the statute to prove its unconstitutionality. *Id.* If a reasonable construction of the statute will render it constitutional, the court must uphold the statute. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979).

In analyzing a facial challenge to the overbreadth and vagueness of a law, the Supreme Court has stated that the first task is to determine whether the statute reaches a substantial amount of constitutionally protected conduct. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). Criminal statutes must be scrutinized with particular care. *City of Houston v. Hill*, 482 U.S. 451, 459 (1987). A statute is overbroad if it sweeps within its coverage speech or conduct that is protected by the First Amendment. *Clark v. State*, 665 S.W.2d 476, 482 (Tex. Crim. App. 1984). The statute provides in pertinent part:

7

(a)  A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:

. . . .

(4)  causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another . . . .

Tex. Pen. Code Ann. § 42.07(a)(4).

The telephone harassment statute does not sweep within its coverage any protected activity under the First Amendment. *See DeWillis v. State*, 951 S.W.2d 212, 217 (Tex. App.—Houston [14th Dist.] 1997, no pet.). In *DeWillis*, the court held that causing another person's telephone to ring repeatedly or repeatedly making anonymous telephone calls was not a constitutionally protected activity under the First Amendment. *Id*. Appellant urges us to distinguish *DeWillis* from the present case because, unlike DeWillis, he had a desire to communicate. However, an intent to communicate does not necessarily turn conduct into speech for purposes of First Amendment analysis. *O'Brien v. United States*, 391 U.S. 367, 376 (1968). The statute does not preclude mere communication. Instead, it criminalizes the act of making telephone communications in a manner reasonably likely to harass, annoy, or offend. Prohibiting harassment is not prohibiting speech because harassment is not protected speech. *Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988) (upholding West Virginia's telephone harassment statute outlawing making repeated telephone calls, during which conversation ensues, with intent to harass any person at called number). We find no authority for the proposition that making repeated telephone calls with the intent to annoy or harass another is protected by the First Amendment. Gillenwaters's overbreadth challenges fail.

8

We next examine the facial vagueness challenge. Because the statute implicates no constitutionally protected conduct, we should uphold the challenge only if the enactment is impermissibly vague in all of its applications. *Village of Hoffman Estates*, 455 U.S. at 494. A statute is void for vagueness and lacks the first essential element of due process when it either forbids or requires the doing of an act in terms so vague that people of common intelligence must guess as to its meaning and differ as to its application. *Id.* at 145. A statute that is not definite enough for a person to know, understand, and apply its terms and provisions is void and unenforceable. *Id*. A statute is unconstitutionally void for vagueness if it specifies no standard of conduct or defines no core of prohibited activity. *Briggs v. State*, 740 S.W.2d 803, 806 (Tex. Crim. App. 1987).

Appellant contends that the words "annoy" and "harass" are unconstitutionally vague. Courts have held these terms to be unconstitutionally vague in the context of prior versions of the harassment statute. *Kramer v. Price*, 712 F.2d 174, 178 (5th Cir. 1983); *Long v. State*, 931 S.W.2d 285, 289 (Tex. Crim App. 1996); *May v. State*, 765 S.W.2d 438, 440 (Tex. Crim. App. 1989). In *Kramer*, the Fifth Circuit held that the terms "annoy" and "alarm" as they appeared in the pre-1983 statute were unconstitutionally vague.[1] 712 F.2d at 178. The *Kramer* court also concluded that the

---

[1] The applicable part of the pre-1983 harassment statute provided:

(a)  A person commits an offense if he intentionally:

    (1)  communicates by telephone or in writing vulgar, profane, obscene language or in a coarse and offensive manner and by this action intentionally, knowingly, or recklessly annoys or alarms the recipient

    . . . .

statute was vague because it did not contain a reasonable person standard. *Id.* The Texas Court of Criminal Appeals subsequently held the pre-1983 version to be unconstitutional. *May*, 765 S.W.2d at 440. The portion of the statute pertaining to telephonic harassment was amended in 1983.

In *Long*, the court of criminal appeals held the stalking provision of the harassment statute unconstitutional. *Long*, 931 S.W.2d at 297. The *Long* court adjudged that the stalking provision of the harassment statute suffered from the same defects as the pre-1983 statute.[2] *Id.* Relying on *Kramer*, the court of criminal appeals observed that the statutory language of the stalking provision was unconstitutionally vague, especially because that provision proscribed "*any* conduct in which a person could possibly engage." *Id.* at 289 (emphasis in the original). The Court also noted that the stalking provision did not include a reasonable person standard. *Id.* at 290.

The analyses in *Kramer*, *May*, and *Long* are not controlling because of critical differences in the statutory language under review. None of those cases considered the present version of the statute under review. Two Texas courts of appeal have determined that the present

---

Act of September 28, 1973, 63d Leg., R.S., ch. 399, 1973 Tex. Gen. Laws 883, 956 (amended 1983).

[2] The pertinent part of the stalking provision provided:

    (a)    A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:

        . . . .

    (7)(A)    on more than one occasion engages in conduct directed specifically toward the other person, including following that person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass that person . . . .

Act of March 19, 1993, 73d Leg., R.S., ch. 10, § 1, 1993 Tex. Gen. Laws 46, 46-47 (amended 1995).

telephone harassment statute is not unconstitutionally vague.  *DeWillis*, 951 S.W.2d at 217; *Bader v. State*, 773 S.W.2d 769, 770 (Tex. App.—Corpus Christi 1989, pet. ref'd.).  The *DeWillis* court concluded:

> We find the 1983 harassment statute specifically defines the conduct necessary to "harass, annoy, alarm, abuse, torment, embarrass, or offend" as "causing the telephone of another to ring repeatedly" or "making repeated telephone communications anonymously."  The provision of the statute also contains a reasonable person standard in the word "another." Moreover, it is the recipient of the telephone calls whose sensibilities must be offended.  Furthermore, even if there were no reasonable person standard, the offense is sufficiently defined to put the offender on notice that his conduct is unlawful.  *See Long*, 931 S.W.2d at 290.

*DeWillis*, 951 S.W.2d at 217.

We agree with the *DeWillis* court that the 1983 amendments to the statute render the reasoning in *Long* inapplicable to the current provisions of the telephone harassment statute.  The words "annoy" and "harass" as they appear in the telephone harassment statute are not unconstitutionally vague because the revised statute prohibits specific conduct that would annoy or harass a reasonable person instead of a specific recipient.  *See id.* (comparing current statute with pre-1983 version).  Additionally, unlike the stalking provision of the harassment statute struck down in *Long*, which prohibited *any* bothersome conduct, the telephone harassment statute prohibits only a narrowly defined scope of activity—here, making repeated phone calls with the intent to harass, annoy, or offend.  *See id.*  We find that the telephone harassment statute is not unconstitutionally vague in all its applications.

11

**As-applied complaint waived**

In his final point of error, Gillenwaters complains that the statute is vague and overbroad as applied to him.

A claim that a statute is unconstitutional as applied is waived if not asserted in the trial court. *Bader v. State*, 15 S.W.3d 599, 603 (Tex. App.—Austin 2000, pet. ref'd). At trial, Gillenwaters raised two issues: (1) that the statute was facially unconstitutional and (2) that the information did not allege the manner and means with sufficient specificity. He did not raise an as-applied objection. Since Gillenwaters failed to preserve this objection for appellate consideration by raising the issue at trial, we need not consider whether the statute was unconstitutionally applied to him.

## CONCLUSION

We affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   July 13, 2005

Do Not Publish

12